IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

CHRISTOPH K. LaDUE and SHELLEY J.
LaDUE, co-administrators of the ESTATE of
CHRISTOPH KARL LaDUE, JR.;

Plaintiffs,

v.

CITY OF TALENT; CITY OF PHOENIX;
JACKSON COUNTY by and through JACKSON
COUNTY SHERIFF; DAVID PLUMMER;
ADAM LEWIS, STEVEN SCOW; JACKSON
COUNTY FIRE DISTRICT NO. 5, an incorporated
rural fire protection district; SKY HIGH SMOKE
N' ACCESSORIES, LLC, an Oregon limited
Liability company; ROBERT DANIEL PAINTER;
LINDSEY NICHOLE PAINTER; JESSE JON
WEAVER; ZENCENSE INCENSEWORKS, LLC,
a Florida limited liability company; nka ZIW, LLC,
a Florida limited liability company; CHARLES
BURTON RITCHIE; JASON YEATMAN;
WILLIAM J. OVERMAN; CRYSTAL HENRY;
BENJAMIN GALECKI; ROBERT BIGGERSTAFF;
EDWARD CREWS; and JOHN DOES 1-10;

Defendants.

No. 1:14-CV-01421-CL

**REPORT &
RECOMMENDATION**

CLARKE, Magistrate Judge.

Christoph and Shelley LaDue, co-administers of the Estate of Christoph Karl LaDue, Jr.

("Plaintiff"), bring this action against first responders; law enforcement; and sellers,

manufacturers, and distributors of a synthetic cannabinoid called "Bizarro Incense." Several defendants associated with Bizarro Incense's manufacturer and distributor move to dismiss (#81, #99, #113, #128, #129, #157, #160, #163, #165) Plaintiff's claims against them for lack of personal jurisdiction. The Court held these motions in abeyance (#103) while the parties conducted limited jurisdictional discovery. Plaintiff now requests leave (#173) to file a Third Amended Complaint to incorporate additional factual allegations and claims. For the reasons set forth below, some of Defendants' motions should be GRANTED (#99, #128, #129, #157, #160, #163, #165), others should be DENIED (#81, #113), and Plaintiff's motion (#173) should be GRANTED.

## BACKGROUND

### I.   Facts Alleged in the Complaint

The following allegations come from Plaintiff's Second Amended Complaint (#58). For the limited purpose of ruling on Defendants' motions to dismiss, the Court assumes these allegations are true and draws all reasonable inferences in Plaintiff's favor. See Ochoa v. J.B. Martin & Sons Farms, Inc., 287 F.3d 1182, 1187 (9th Cir. 2002).

On September 5, 2012, Christoph Karl LaDue, Jr. ("LaDue"), a 23 year old man with Schizophrenia, acquired a smokeable synthetic cannabinoid called "Bizarro Incense" from Sky High Smoke N' Accessories ("Sky High") in Medford, Oregon. SAC ¶ 1. ZIW, LLC ("ZIW") — formerly known as Zencense Incenseworks, LLC — manufactured, distributed, and sold Bizarro Incense to businesses throughout the United States, including Sky High. SAC ¶ 14.

On the evening of the 5th, LaDue smoked an unknown quantity of Bizarro Incense and had a severe adverse reaction. SAC ¶ 23. LaDue became agitated and disoriented, began sweating profusely, repeatedly told his parents that he was on fire, and appeared to be hearing

voices. SAC ¶¶ 23, 25, 30. When LaDue became violent toward his father, a family member called 9-1-1 and requested emergency medical assistance. SAC ¶ 26. Responding paramedics refused to render aid to LaDue until he was secured by law enforcement. SAC ¶ 28. In an effort to restrain him, responding officers used their Tasers on LaDue a total of 17 times. SAC ¶ 32. They sprayed LaDue at close range with pepper spray, kicked him in the ribs/chest, and employed control and hair holds on him. SAC ¶ 32-33. As a result of LaDue's agitated delirium brought on by his ingestion of Bizzaro Incense and the manner in which the officers attempted to restrain him, LaDue went into sudden cardiac arrest and died. SAC ¶ 38.

## II.    Jurisdictional Evidence Filed by Affidavit

The parties submitted the following evidence to assist the Court in its jurisdictional analysis. See Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004) (courts look to pleadings and affidavits to determine whether personal jurisdiction is appropriate).

### A. Bizarro Incense

Invoices dated from August 6 to November 6, 2012 document the sale of ZIW products, including Bizarro Incense, to Sky High. Cox Decl. Ex. 3, at 25-31. Rachel Templeman is listed as ZIW's sales representative on each invoice. Cox Decl. Ex. 3, at 25-31; Ex. 4, at 7.

Oregon State Police performed lab analysis on the substance ingested by LaDue and found that it contained a chemical identified as XLR11. Williams Dep. 22:4-23:9. XLR11 is a synthetic cannabinoid. On May 16, 2013, the U.S. Drug Enforcement Administration ("DEA") temporarily designated XLR11 as a Schedule I illegal drug under the Controlled Substances Act ("CSA") in order to avoid imminent hazard to public safety. *Temporary Placement of Three Synthetic Cannabinoids into Schedule I*, OFFICE OF DIVERSION CONTROL, DRUG ENFORCEMENT

ADMINISTRATION,    U.S.    DEPARTMENT    OF    JUSTICE    (May    16,    2013),
http://www.deadiversion.usdoj.gov/fed_regs/rules/2013/fr0516.htm. In doing so, the DEA noted
that XLR11 is often included in products marketed as "legal" alternatives to marijuana. Id.
Oregon classifies all "cannabinoid receptor agonist[s]" not listed in Schedules II through V, or
approved by the Food and Drug Administration ("FDA"), as Schedule I drugs. OR. ADMIN. R.
855-080-021(3).

Defendants Charles Burton Ritchie and Benjamin Galecki have invoked the Fifth
Amendment in response to questions regarding the presence of XLR11 in ZIW's products. Cox
Decl. Ex. 4, at 6; Ritchie Dep. 20:25-21:6; Galecki Dep. 10:12-18. On December 3, 2014, a ZIW
employee, Robert Biggerstaff, testified that ZIW was in "what was known as the potpourri
business" but that its products were intended "for people to smoke and get high." Cox Decl Ex.
6, at 4, 10. He explained that ZIW sprayed its botanicals with "an ingredient that would alter
consciousness." Cox Decl. Ex. 6, at 4.

B.  ZIW's Organizational Structure

ZIW was a Florida limited liability company. Galecki Aff. ¶ 21. It changed its name from
Zencense to ZIW in May 2012, and ceased operations in November 2012 when it merged with a
California business to form ZenBio, LLC. Galecki Aff. ¶¶ 21-22; Cox Decl. Ex. 1, at 3-4. At its
peak, ZIW employed over 100 people. Galecki Dep. 19:1-4. It did not maintain a place of
business in Oregon, and did not distribute large amounts of products to Oregon retailers. Galecki
Aff. ¶¶ 23, 25. ZIW's website was a single page without any hyperlinks or interactive features.
Ritchie Dep. 43:11-22.

In September 2012, Ritchie amended ZIW's Articles of Organization, on file with the
Florida Secretary of State, to list Galecki, Jason Yeatman, William Overman, Crystal Henry, and

Edward Crews as managers. Cox Decl. Ex. 2, at 2. Overman testified that he was not aware that he was listed on the organization's state records until after the fact. Overman Dep. 15:2-20. When he discovered his inclusion, Henry assured him that his name would be removed. Overman Dep. 15:21-24. Moreover, Overman, Yeatman, and Crews testified that they were not members of ZIW. Overman Aff. ¶ 21 ("I am not and never have been a member of ZIW, LLC, a Florida limited liability company, nor Zencense Incenseworks, LLC, nor was I an employee of either."); Yeatman Aff. ¶ 21 ("I have never been a member of ZIW, LLC."); Crews Aff. ¶ 21 ("I have never been a member of Zencense Incenseworks, LLC or ZIW, LLC.").

C. Benjamin Galecki

Galecki is a resident of Florida. Galecki Aff. ¶ 2. He was a member and 20 percent owner of ZIW. Galecki Aff. ¶ 2; Galecki Dep. 9:8-15. As Chief of Operations, Galecki "handled a wide variety of business-related matters on behalf of the company." Galecki Aff. ¶ 24; Galecki Dep. 36:23-25. Galecki trained employees on how to manufacture ZIW products. Ritchie Dep. 16:4-9. He set up ZIW's shipping process but was not involved in its day-to-day operations. Galecki Dep. 37:1-5. He represented the company at trade shows in Las Vegas and Atlantic City. Galecki Dep. 16:2-5. He also sought out "state-specific reports" detailing whether ZIW's products might be considered illegal under various state laws. Galecki Dep. 24:2-14. ZIW would use these reports to determine which states the sales team should avoid. Galecki Dep. 25:14-23. ZIW also did not sell to Hawaii or Alaska because "shipping costs were prohibitive." Galecki Dep. 25:15-16.

Galecki testifies that he did not "make any strategic decisions in [his] position with Zencense ... to sell, market[,] or distribute the company's products specifically to Oregon." Galecki Aff. ¶ 26. Nor did he "have primary control over the sale of the company's products in

Oregon." Galecki Aff. ¶ 26. He was not aware that ZIW had Oregon clients until this suit was filed. Galecki Dep. 59:25-60:1.

### D. Charles Burton Ritchie

Ritchie is the founder, managing member, and 80 percent owner of ZIW. Ritchie Dep. 8:4-23. He is a former Floridian who currently resides in Utah. Ritchie Decl. ¶ 3. He "handled a wide variety of business-related matters" for ZIW. Ritchie Decl. ¶¶ 21, 24. He authored ZIW's product formulas and mixes along with Galecki. Ritchie Dep. 15:2-5. He attended trade shows; spoke to distributors, wholesalers, and retailer; wrote and reviewed sales scripts; determined "which states we would sell products in[;]" and hired and trained the shipping team. Ritchie Dep. 18:1-25.

Like Galecki, Ritchie testifies that he was not involved in any strategic decisions to target Oregon and that he "did not have primary control" over sales in Oregon. Ritchie Decl. ¶ 25. Ritchie instructed ZIW's sales force to refrain from selling to certain states where their products might be considered illegal. Ritchie Dep. 31:5-9, 34:19-35:6. Otherwise, he allowed them to exercise discretion in targeting states and identifying prospective clients. Ritchie Dep. 31:5-9. Ritchie did not closely supervise the sales team. Ritchie Dep. 40:11-16. Ritchie was unaware of any sales to Oregon until this suit was filed. Ritchie Dep. 35:20-24. In August 2012, Ritchie was focused on preparing ZIW for sale. Ritchie Dep. 67:8-12. His high-level supervision of the sales staff "precipitously stopped" during that time. Ritchie Dep. 67:13-18.

Ritchie was listed as the shipper of products mailed to Sky High. Cox Decl. Ex. 3. One invoice noted "Shipping is Free Per [Ritchie]." Cox Decl. Ex. 4, at 6-7. Despite the use of his name, Ritchie testifies that he was not involved in the sale or shipment. His name was used as a "marketing technique" given his notoriety in the industry. Ritchie Dep. 54:21-55:2. Typically, a

salesperson would call his office and ask to give a new customer free shipping. He would approve of the request without specific knowledge of who the client was or where they were located. Ritchie Dep. 54:18-55:4, 63:6-23. The sales staff also had the autonomy to include that verbiage on invoices and labels without his approval. Ritchie Dep. 64:4-8.

### E.   Jason Yeatman

Yeatman resides in Alabama. Yeatman Aff. ¶ 2. Yeatman was a product developer for ZIW. Am. Yeatman Aff. ¶ 22; Cox Decl. Ex. 8, at 3. Eventually, he was promoted to Manager of Packaging. Yeatman Dep. 19:1-4. He was not involved in marketing or sales. Am. Yeatman Aff. ¶ 22.

### F.   William Overman

William Overman is a resident of Utah. Overman Aff. ¶ 2. He worked as a contractor for ZIW for eight weeks in 2012. Overman Aff. ¶ 21. He assisted with a variety of tasks including building shelving, organizing shelving, ordering production items, taking inventory of finished products, and preparing samples for chemical testing. Overman Dep. 9:21-13-15. He was not an employee or member. Overman Aff. ¶ 21. Overman has no personal knowledge of ZIW's Oregon sales. Overman Aff. ¶ 22. His responsibilities did not normally include shipping. Ritchie Dep. 19:16-17.

### G.   Edward Crews

Crews is a long-term Florida resident. Crews Aff. ¶ 2. He performed part-time contract work for ZIW for about eight weeks in 2012. Crews Aff. ¶ 21; Crews Dep. 9:6-12. He was involved in production and packaging; not sales, shipping, or marketing. Crews Aff. ¶ 21. Crews testified that he offered his organizational skills to ZIW to help it become more efficient. Crews Dep. 9:6-19. He made recommendations and changes like buying more mixers and building

more drying racks. Crews Dep. 17:13-21. Yeatman described Crews as a manager of production and packaging, and a "go-between" with Galecki and Ritchie. Yeatman Dep. 81:22-82:8.

### H. Crystal Henry

Henry is a lifelong Florida resident. Henry Aff. ¶ 2. She was employed as ZIW's accounting manager. Henry Aff. ¶ 21. Her role was limited to accounting duties. Henry Aff. ¶ 22. She was not involved in marketing, sales, or service, and does not recall any business communications with Oregon. Henry Aff. ¶¶ 22-23. Ritchie testified that Henry or someone she appointed would have reviewed the payment terms for any sale in Oregon. Ritchie Dep. 60:19-25.

On June 3, 2014, Henry pled guilty in the Southern District of Alabama to conspiring to manufacture and nationally distribute misbranded drugs in her capacity as accounting manager for ZenBio, ZIW's successor. Cox Decl. Ex. 1, at 4, 17. Henry admitted that ZenBio produced synthetic cannabinoid products, containing XLR11, for human consumption but falsely marketed them as "potpourri" to evade the enforcement of food and drug laws. Cox Decl. 4-5.

## STANDARD

### I.    Motions to Dismiss

Federal courts may exercise personal jurisdiction over a non-resident defendant where the state's long-arm statute confers jurisdiction over the defendant and the exercise of jurisdiction does not violate due process. Data Disc. Inc. v. Sys. Tech. Assocs., Inc., 557 F.2d 1280, 1286 (9th Cir. 1977). Because Oregon law confers jurisdiction over an out-of-state defendant that is coextensive with due process, the court need only analyze whether the exercise of jurisdiction comports with due process. Gray & Co. v. Firstenberg Mach. Co., 913 F.2d 758, 760 n.1 (9th Cir. 1990). Plaintiffs bear the burden of proving a prima facie case that jurisdiction exists over a

defendant. Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004) ("Where a defendant moves to dismiss . . . for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate.").

## II.        Motion to Amend

After the initial pleading stage, a plaintiff may amend his "pleading only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2). FED. R. CIV. P. 15(a) instructs the Court to "freely give leave when justice so requires." Although this "rule should be interpreted with 'extreme liberality,' leave to amend is not to be granted automatically." Jackson v. Bank of Hawaii, 902 F.2d 1385, 1387 (9th Cir. 1990) (quoting United States v. Webb, 655 F.2d 977, 979 (9th Cir. 1981)) (internal citation omitted). Whether to grant leave to amend lies within the sound discretion of the trial court. Webb, 655 F.2d at 979. In exercising this discretion, the court "must be guided by the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities." Id.

## DISCUSSION

## I.        The Court Has Jurisdiction Over Some, But Not All, Moving Defendants.

Due process requires a court to have general or specific jurisdiction over a defendant to avoid "offend[ing] traditional notions of fair play and substantial justice." Int'l Shoe Co. v. State of Wash., 326 U.S. 310, 316 (1945) (citations omitted). A court has general jurisdiction where the defendant's contacts with the forum are "substantial" or "continuous and systematic." Decker Coal Co. v. Commw. Edison Co., 805 F.2d 834, 839 (9th Cir. 1986). Plaintiff asserts this court has specific, not general, jurisdiction over Defendants. A court has specific jurisdiction over a defendant if "there is a strong relationship between the quality of the defendant's forum contacts and the cause of action." Id. Courts apply the three-part "minimum contacts" test to determine

whether specific jurisdiction comports with due process. Pebble Beach Co. v. Caddy, 453 F.3d

1151, 1155 (9th Cir. 2006). The test is satisfied when:

> (1) the defendant has performed some act or consummated some transaction within the forum or otherwise purposefully availed himself of the privileges of conducting activities in the forum, (2) the claim arises out of or results from the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable.

Id. (quoting Bancroft & Masters, Inc. v. Augusta Nat'l Inc., 223 F.3d 1082, 1086 (9th Cir.

2000)). Plaintiff bears the burden of satisfying the first two prongs of the test. Id. Defendants

bear the burden on the third prong. Sinatra v. Nat'l Enquirer, Inc., 854 F.2d 1191, 1195 (9th Cir.

1988).

    A.    Purposeful Direction[1]

Courts of the Ninth Circuit engage in another three-part inquiry, called the "effects" test,

to determine whether the first prong of the "minimum contacts" test is satisfied in tort cases like

this one. Dole Food Co. v. Watts, 303 F.3d 1104, 1111 (9th Cir. 2002). As set forth in Calder v.

Jones, 465 U.S. 783 (1984), the "effects" test "requires that "the defendant allegedly have (1)

committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the

defendant knows is likely to be suffered in the forum state." Dole Food Co., 303 F.3d at 1111.

The "effects" test's first requirement is easily met here. Each moving defendant committed an

intentional act when he or she participated in the production, sale, and/or distribution of ZIW's

products. Put differently, they acted with the "intent to perform an actual, physical act in the real

world." Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 806 (9th Cir. 2004). The more

---

[1] Although often conflated, "purposeful direction" is a different concept than "purposeful availment." Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1128 (9th Cir. 2010). Courts apply a "purposeful direction" analysis to tort suits, like this one, and engage in a "purposeful availment" analysis in contract disputes. Id.

difficult question is whether these Defendants "expressly aimed" their activities at Oregon with knowledge that they would likely cause harm here.

The "express aiming" requirement is "satisfied when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." Bancroft & Masters, Inc., 223 F.3d at 1087. The key to "express aiming" is "the presence of individualized targeting[.]" Id. For example, in Metropolitan Life Ins. Co. v. Neaves, 912 F.2d 1062 (9th Cir. 1990), the Ninth Circuit held that a California court had specific jurisdiction over an Alabamian who sent a letter to an insurance company claiming entitlement to a payment that actually belonged to a Californian. The court noted that the location of the letter's recipient was irrelevant. Id. at 1065. What mattered for jurisdictional purposes was that the defendant "was purposefully defrauding [the plaintiff] in California" by sending the letter. Id.

Defendants' association with ZIW is not sufficient alone to confer jurisdiction over them. Davis v. Metro Prod., Inc., 885 F.2d 515, 520 (9th Cir. 1989) ("[A] person's mere association with a corporation that causes injury in the forum state is not sufficient in itself to permit that forum to assert jurisdiction over the person."). The "fiduciary shield" doctrine generally protects corporate officials from personal jurisdiction in a forum where their only contacts arise from the performance of official duties on the corporation's behalf. Kransco Mfg. v. Markwitz, 656 F.2d 1376, 1379 (9th Cir. 1981) (a "corporate officer who has contact with a forum only with regard to the performance of his official duties is not subject to personal jurisdiction in that forum."). This is not to say that Defendants' status within ZIW insulates them from jurisdiction. See Davis, 885 F.2d at 521. Jurisdiction may be appropriate over a corporate officer who had "control of, and direct participation in the alleged activities." L & A Designs, LLC v. Xtreme ATVs, Inc., 860 F.Supp.2d 1196, 1199 (D. Or. 2012) (citations omitted). The "central determination" is

whether the corporate officer was the "primary participant or 'guiding spirit' in the alleged wrongdoing intentionally directed at" the forum state. Wolf Designs, Inc. v. DHR Co., 322 F.Supp.2d 1065, 1072 (C.D. Cal. 2004).

The defendants with pending motions to dismiss can be generally sorted into two categories. First, there are the owners of ZIW — Ritchie and Galecki — who oversaw and directed its operation. Second, there are employees and contractors listed as managers on ZIW's Articles of Organization — Yeatman, Overman, Henry, and Crews — who worked in more limited capacities for ZIW. The Court will discuss this second group of movants before turning to ZIW's owners.

Plaintiff asserts the fiduciary shield does not protect Yeatman, Overman, Henry, and Crews because they were "primary participants in more than one of the necessary processes that led to the nationwide distribution of [ZIW's] spice products." Pl.'s Supp. Opp., at 17. In support of this assertion, Plaintiff submits evidence that each defendant participated in one or more processes essential to ZIW's possibly criminal enterprise. Yeatman and Crews worked in production and packaging. Overman performed various odd jobs including inventory. Henry handled ZIW's accounting. In addition, Plaintiff notes that they were all listed as managers on ZIW's Articles of Organization.

These facts are not constitutionally sufficient to validate this Court's jurisdiction. First, there is no evidence that Yeatman, Overman, Henry, or Crews had the authority to "purposefully direct" ZIW's operations. Affidavits submitted by Yeatman, Overman, Henry, and Crews show that they played limited roles within ZIW and worked under others' instruction. Testimony indicates that Ritchie may have inaccurately listed them as managers on state records. Because it appears that Yeatman, Overman, Henry, and Crews did not play central roles in the challenged

activity, the Court is disinclined to disregard the fiduciary shield that protects them. See Click v. Dorman Long Tech., Ltd., No. C 06-1936 PJH, 2006 WL 2644889, at *5 (N.D. Cal. Sept. 14, 2006) (declining to disregard the fiduciary shield doctrine for a defendant who was alleged to be only an employee). Second, there is not a sufficient link between Yeatman, Overman, Henry, and Crews' alleged conduct and the forum state. At most, Plaintiff has established that these four individuals could have guessed that some of ZIW's products would land in Oregon given ZIW's nationwide distribution. Ninth Circuit precedent requires "something more" than a foreign act with foreseeable effects in the forum state to justify jurisdiction. Bancroft & Masters, Inc., 223 F.3d at 1087; see also J. McIntyre Mach., Ltd. v. Nicastro, 131 S. Ct. 2780, 2788 (2011) ("as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State."). Defendants must have expressly aimed their wrongful conduct at Oregon. Bancroft & Masters, Inc., 223 F.3d at 1087. There is no evidence that Yeatman, Overman, Henry[2], or Crews did so. Therefore, it would violate due process to exercise jurisdiction over them. Dismissal is appropriate.

Turning to the owners of ZIW, Plaintiff asks the Court to follow its sister district court's analysis in Wolf Designs and find that Ritchie and Galecki were "guiding spirits" in the alleged wrongful conduct. Wolf Designs is persuasive, but not binding, authority on this Court. Hart v. Massanari, 266 F.3d 1155, 1172 (9th Cir. 2001) (discussing the "very important" differences between controlling precedent and persuasive case law). There, a California seller of high-end jewelry boxes sued the president of its former distributor for allegedly misappropriating trade secrets and selling similar, but inferior, products. Wolf Designs, 322 F.Supp.2d at 1068. The

---

[2] Plaintiff suggests that Henry's admissions in her Alabama plea agreement are sufficient to justify Oregon's jurisdiction. The Court disagrees. While the agreement may support the conclusion that Henry was a "primary participant" in ZenBio's illegal activities, it does not offer details on her role with ZIW or her involvement in the wrongdoing alleged here.

defendant, a Georgia resident named Richardson, moved to dismiss for lack of personal jurisdiction. Id. In support of his motion, Richardson made a factual showing very similar to those submitted by Galecki and Ritchie:

> Richardson claims that the few products that were sold to California residents were a result of purchases made at trade shows which took place in Atlanta, Georgia. Further, Richardson claims that he was unaware of any sale of the accused products to California residents, and he became aware of the purchases made by California residents only after the products were shipped to their ultimate retail destination. Moreover, Richardson submits that almost all of [his company's] business is within the southern states; they do not conduct business within California; and they have no customer base in California. … Furthermore, Richardson states that while [his company] provided representation for Plaintiff, Richardson never traveled to California and has not visited California in over six years outside of an occasional layover at the airport. Richardson also claims that [his company] does not direct any advertising towards California, nor has he personally directed or authorized any advertising or solicitation in California. Finally, Richardson declares that he did not authorize, control, direct, or even have knowledge of any of [his company's] sales to customers in California.

Id. at 1072-73 (internal citations omitted). Despite these facts, the California district court found that jurisdiction was appropriate. Of particular import was Richardson's admission that, as president and sole owner of the company, he had the final say on its policies and products. Id. at 1073. The court concluded this admission was sufficient to establish that Richardson "personally directed, participated in, and authorized the alleged infringing activity" and "allowed [that activity] to be directed toward California[.]" Id.

Similar to Richardson, Ritchie and Galecki were the owners and primary decision-makers of ZIW. Together, they oversaw and controlled every aspect of ZIW's operations. Given their high ranking positions, neither was personally involved in day-to-day sales or shipping. They were not aware of ZIW's business with Oregon until this lawsuit. Nevertheless, their alleged misconduct does not amount to "mere untargeted negligence." Calder, 465 U.S. at 789. Testimony reveals that Ritchie and Galecki "personally directed, participated in, and authorized"

the alleged misconduct — the production and sale of an illegal and dangerous product — and allowed that misconduct to be directed toward Oregon. <u>Wolf Designs</u>, 322 F.Supp.2d at 1073. Ritchie and Galecki sought to sell ZIW's products wherever it was legally feasible and fiscally reasonable to do so. To that end, they developed a list of states whose laws were not hospitable to ZIW's products, and instructed their sales force to refrain from selling there. Ritchie and Galecki left Oregon off of the "do not sell" list. By doing so, they indirectly gave their sales team the green light to pursue business here. Ritchie and Galecki targeted Oregon by omission. They were the "guiding spirits" in the alleged wrongdoing intentionally directed at the forum state. <u>Id.</u> at 1072.

The Court notes that <u>Wolf Designs</u> and the present action involve different claims. It follows that the plaintiffs in both cases made different showings of the defendants' *mens rea* in relation to the forum state. <u>Wolf Designs</u> involved allegations that Richardson was copying a competitor's products. Evidence showed that Richardson was aware of the plaintiff's business in California and, made the affirmative decision to produce and sell imitations of its products. Richardson's alleged misconduct was directly and singularly aimed at the plaintiff and, by extension, its home state of California. Plaintiff accuses Ritchie and Galecki of engaging in wrongful conduct with a much wider geographical scope. They produced and distributed an allegedly dangerous product nationwide. Ritchie and Galecki indirectly targeted Oregon, along with many other states, by failing to include it on ZIW's "do not sell" list. This distinction does not alter the Court's recommendation of jurisdiction over ZIW's owners. "Express aiming" analysis "depends, to a significant degree, on the specific type of tort or other wrongful conduct at issue." <u>Schwarzenegger</u>, 374 F.3d at 807. What is sufficient to establish targeting for an infringement claim is different than what is required for a products liability claim. Given "the

relationship among the defendant, the forum, and the litigation within the particular factual context of [this] case[,]" the Court finds Plaintiff has satisfied the second element of Calder's "effects" tests for Ritchie and Galecki. Core-Vent Corp. v. Nobel Industries AB, 11 F.3d 1482, 1487 (9th Cir. 1993). Ritchie and Galecki were the "guiding spirits" behind the activities giving rise to this suit. They set explicit limits on ZIW's sales but did not direct the sales team to avoid Oregon. By doing so, Ritchie and Galecki expressly aimed their wrongful conduct here. Unlike Wolf Designs, other states may have jurisdiction over similar claims against Defendants. However, that possibility does not alter this Court's analysis.

The third and final element of the Calder "effects" test requires the Court to determine whether Ritchie and Galecki caused harm that they knew was likely to be suffered in the forum state.[3] This element is satisfied when the defendant's intentional acts have "foreseeable effects" in the forum. Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1131 (9th Cir. 2010). In this case, it was foreseeable that Oregon residents like LaDue could be harmed by dangerous drugs that Ritchie and Galecki allowed to enter the state.

B.    Claim Arising from Defendants' Forum-Related Activities

Second, Plaintiff's claims must arise directly out of Defendants' contacts with the forum state in order for specific jurisdiction to be appropriate. Pebble Beach Co., 453 F.3d at 1155. Courts in the Ninth Circuit measure this requirement in terms of "but for" causation. See Ziegler v. Indian River County, 64 F.3d 470, 474 (9th Cir. 1995). It is met here. But for Ritchie and Galecki's allowance of sales to Oregon, ZIW's sales force would not have sold its products to an

---

[3] The Court need not assess whether Yeatman, Overman, Henry, or Crews knowingly caused foreseeable harm in Oregon because their dismissal is appropriate under the second prong of the Calder "effects" test. See Schwarzenegger, 374 F.3d at 807 n.1 ("Because Schwarzenegger has failed to sustain his burden with respect to the second part of the Calder effects test, we need not, and do not, reach the third part of the test.").

Oregon smoke shop and LaDue would not have acquired the Bizarro Incense that allegedly caused his death.

### C.   Reasonableness

Finally, the Court must determine whether it would be reasonable to exert personal jurisdiction over Ritchie and Galecki. In doing so, the Court will presume reasonableness unless Defendants present a "compelling case" to the contrary. Ballard v. Savage, 65 F.3d 1495, 1500 (9th Cir. 1995) (courts should "presume that an otherwise valid exercise of specific jurisdiction is reasonable"); Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985) (a defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."). Courts in the Ninth Circuit consider seven factors to determine whether the exercise of jurisdiction is reasonable:

> (1) the extent of the defendants' purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

Dole Food Co., 303 F.3d at 1114. The Court will balance and weigh all seven factors; none is dispositive. Ziegler, 64 F.3d at 475.

The Court has already concluded that Ritchie and Galecki purposely directed their actions at Oregon. However, the evidence does not suggest that they extensively interjected themselves into the forum state. Accordingly, the first reasonableness factor cuts against jurisdiction. Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd., 328 F.3d 1122, 1132 (9th Cir. 2003).

The second factor also weights slightly in Defendants' favor. Ritchie resides in Utah and Galecki lives in Florida. The Court recognizes that it will be inconvenient for them to participate

in this out-of-state litigation. However, advances in transportation and telecommunications should largely alleviate this burden. Menken v. Emm, 503 F.3d 1050, 1060 (9th Cir. 2007).

The third and fourth factors weigh in favor of Plaintiff. Defendants have not suggested that this Court's exercise of jurisdiction would conflict with their home states' sovereignty. Meanwhile, Oregon has "a strong interest in protecting its citizens against the tortious acts of others" like those alleged in Plaintiff's complaint. Shute v. Carnival Cruise, 897 F.2d 377, 387 (9th Cir. 1988).

The fifth factor asks which forum is best positioned to efficiently resolve this dispute. The focus is on the location of evidence and witnesses. Harris Rutsky & Co. Ins. Servs., 328 F.3d at 1133. While ZIW operated in Florida, the events giving rise to this suit occurred primary in Oregon. LaDue purchased Bizarro Incense from a local smoke shop here and passed away after ingesting it. The majority of witnesses who can speak to his purchase, ingestion, and death reside in Oregon. Therefore, this factor cuts in favor of Plaintiff.

The sixth factor — convenience to the plaintiff — is not of significant importance. Caruth v. Int'l Psychoanalytical Ass'n, 59 F.3d 126, 129 (9th Cir. 1995). The Court recognizes that Plaintiff could obtain the most effective and convenient relief in Oregon. However, this factor has little to no bearing on this Court's analysis. Id.

The seventh and final factor in the reasonableness test is the existence of an alternate forum. This element comes into play, however, "only when the forum state is shown to be unreasonable." CollegeSource, Inc. v. AcademyOne, Inc., 653 F.3d 1066, 1080 (9th Cir. 2011). Ritchie and Galecki have not made that showing. On the whole, they have not carried the heavy burden of presenting a compelling case against jurisdiction. Ballard, 65 F.3d at 1502. At best, the

factors in favor and against jurisdiction are split. The Court "can only conclude therefore that an exercise of personal jurisdiction over [Ritchie and Galecki] would be reasonable." Id.

## II.   The Court Should Grant Plaintiff's Motion to Amend.

There are several factors the Court must consider when assessing the propriety of Plaintiff's request to amend: (1) undue delay, (2) bad faith, (3) prejudice to the opposing party, (4) futility of amendment, and (5) repeated failure to cure deficiencies through prior amendment. Johnson v. Buckley, 356 F.3d 1067, 1077 (9th Cir. 2004). Absent prejudice or a strong showing of the other factors, there is a presumption under Rule 15(a) in favor of granting leave to amend. Eminence Capital, L.L.C. v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003).

All five factors weigh in favor of granting amendment here. First, there is no evidence that Plaintiff's proposed amendments include facts or theories that were unreasonably omitted from the original pleading. See Royal Ins. Co. of Am. v. Sw. Marine, 194 F.3d 1009, 1016-17 (9th Cir. 1999) (the court does not look favorably on late amendments to assert new theories when the movant knew of the new theory since the cause of action began). Rather, Plaintiff acquired the new allegations through court-ordered jurisdictional discovery. Second, nothing in the record suggests bad faith by Plaintiff. Third, and most importantly, Defendants have not submitted any argumentation or evidence to suggest that they would be prejudiced by amendment. DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 187-88 (9th Cir. 1987). Fourth, amendment is not futile. Plaintiffs' complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 570 (2007)). Finally, Plaintiff has not taken multiple bites at the apple by alleging and realleging the same theory in an

attempt to cure pleading deficiencies. See Eminence Capital, L.L.C., 316 F.3d at 1053. For all these reasons, Plaintiff's request to amend should be granted.

## RECOMMENDATION

For the reasons stated above, the Court should GRANT the motions to dismiss filed by Defendants Yeatman, Overman, Henry, and Crews (#99, #128, #129, #157, #160, #163, #165); DENY the motions to dismiss filed by Defendants Ritchie and Galecki (#81, #113); and GRANT Plaintiff's motion to amend (#173).

This Report and Recommendation will be referred to a district judge. Objections, if any, are due no later than fourteen (14) days after the date this recommendation is filed. If objections are filed, any response is due within fourteen (14) days after the date the objections are filed. *See* FED. R. CIV. P. 72, 6. Parties are advised that the failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED this _____ day of March 2016.

MARK D. CLARKE
United States Magistrate Judge